IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-550-06 |
| KIDADA SAVAGE | : | |

**SURRICK, J.**                                                                                                             **DECEMBER 22, 2011**

### MEMORANDUM

Presently before the Court is Defendant Kidada Savage's Motion to Preclude the Death Penalty. (ECF No. 336.) For the following reasons, the Motion will be denied.

### I. BACKGROUND

On June 22, 2011, a federal grand jury in Philadelphia returned a 17-count Superseding Indictment charging Defendant with conspiracy to participate in a racketeering enterprise (Count 1), six counts of murder in aid of racketeering (Counts 10-15), which are punishable by death, retaliating against a witness (Count 16), and use of fire to commit a felony (Count 17). (Second Superseding Indictment, ECF No. 229.) All of the charges against Defendant relate to a single criminal episode involving the murder by arson of a family of one of the key witnesses in the 2005 drug trial of Defendant's brother, Kaboni Savage. (*Id.*) Steven Northington, Robert Merritt, and Kaboni Savage are also charged in the Superseding Indictment.[1] (*Id.*) The

---

[1] Defendant Kaboni Savage is charged in all 12 of the murder counts, while Defendant Steven Northington is charged in two and Defendant Robert Merritt is charged in six of the murder counts. (Second Superseding Indictment.) These three co-defendants are also charged with other crimes, including the RICO conspiracy count. (*Id.*) On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Kaboni Savage, Robert Merritt, and Steven Northington. (ECF Nos. 196, 197, 198.)
      Defendant Lamont Lewis was also charged in the Indictment. The charges against Lewis were disposed of by guilty plea on April 21, 2011.

Indictment contains a list of "special findings" related to all of the Defendants, making all four eligible for the death penalty. (*Id.*)

Defendant was arrested on June 22, 2011. (Def.'s Mot. 6, ECF No. 336.) On June 27, 2011, an attorney was appointed to represent Defendant. On July 28, 2011, a second attorney "learned in the law applicable to capital cases" was appointed pursuant to 18 U.S.C. § 3005. (ECF No. 268.) On August 5, 2011, an Order was entered directing the U.S. Attorney for the Eastern District of Pennsylvania and counsel for Defendant to meet within 60 days to discuss the U.S. Attorney's request for authorization from the Attorney General to seek the death penalty against Defendant. (ECF No. 272.) The Order also provided that by January 2012, the Government was required to notify the Court and Defendant of its intention to seek the death penalty or to not seek the death penalty. (*Id.*)

The Government and counsel for Defendant met on October 24, 2011. (Gov't's Resp. 2, ECF No. 341.) At that meeting, Counsel presented substantive arguments in support of mitigation, but maintained that they had not had sufficient time to prepare for the meeting. (*Id.*) On November 1, 2011, the Government invited counsel for Defendant to meet with the U.S. Attorney's Office and the Capital Crimes Review Committee ("CCRC") located at the Department of Justice ("DOJ") in Washington D.C. (*Id.*)[2] After resolving scheduling conflicts, the meeting took place on December 5, 2011. (*Id.* at 3.) On December 14, 2011, we granted the Government's unopposed motion to extend the deadline to file its notice of intent. (ECF No.

---

[2] The CCRC is a special committee comprised of DOJ officials appointed by the Attorney General. The CCRC reviews the request for authorization to seek the death penalty from the U.S. Attorney, including all relevant materials and submissions from both the Government and from the defendant, and makes a recommendation to the Attorney General regarding whether to pursue the death penalty in a particular case.

343.) The Government has until February 17, 2012 to notify this Court and Defendant of its intention to seek the death penalty or to not seek the death penalty. (*Id.*) At the December 5th meeting, Counsel continued to complain that they lacked sufficient time to present a meaningful mitigation defense. Nevertheless, Counsel made substantive arguments in an attempt to convince the Attorney General not to seek the death penalty. (Gov't's Resp. 3.)

Trial for all Defendants is scheduled to begin on September 10, 2012. (Order, ECF No. 239.)

Defendant filed the instant Motion on November 18, 2011. Defendant filed a supplement to the Motion on November 29, 2011. (ECF No. 338.) The purpose of the supplement was to update the declaration of Kevin McNally, Director of the Federal Death Penalty Resource Counsel Project, which was filed as an exhibit to the Motion. (*Id.*) Mr. McNally's declaration states that based on his research, the average time between indictment and the defense presentation to the CCRC in federal capital cases is 12.2 months. (*Id.* at Ex. A.) The Government filed a response to Defendant's Motion on December 8, 2011. (Gov't's Resp.) Defendant filed a reply to the Government's response on December 15, 2011. (ECF No. 344.)

## II.　DISCUSSION

Defendant advances two arguments in support of her Motion. Defendant argues that Counsel did not have sufficient time to prepare their mitigation presentation to the U.S. Attorney's Office on October 14th, and to the CCRC on December 5th. Defendant also contends that with the trial currently scheduled to take place in September 2012, Counsel will not have adequate time to prepare for the presentation of mitigation evidence at trial. The Government responds that Defendant has no constitutional or substantive rights to present evidence in support of mitigation

3

to the U.S. Attorney's Office or to the DOJ. The Government also argues that based on the schedule currently set and the facts surrounding Defendant's charges, her counsel will have more than enough time to prepare for the penalty phase of trial.

As a threshold matter, the Government has not yet filed a notice of intent pursuant to 18 U.S.C. § 3593.[3] Therefore, Defendant's challenge to the imposition of the death penalty is premature at this time. *See Wyatt v. Gov't of the V.I.*, 385 F.3d 801, 806 (3d Cir. 2004) ("A dispute is not ripe for judicial determination if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). Assuming, *arguendo*, that Defendant's argument was ripe for review, for a number of reasons, it must be rejected.

Defendant is essentially requesting that we interfere with the discretionary authority granted to the Government in making the decision as to whether to seek the death penalty. The Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.*, explicitly vests discretion with the

---

[3] Section 3593 provides:

(a) Notice by the government.--If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice--

(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

(2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

government.  The Act states that if "the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall . . . file . . . a notice [of intent]." 18 U.S.C. § 3593(a); *see also McCleskey v. Kemp*, 481 U.S. 279, 296-97 (1987) (discussing a prosecutor's wide discretion in deciding whether to seek the death penalty); *United States v. Robinson*, 45 F.3d 1423, 1438 (10th Cir. 1995) ("[C]oncerns relating to the doctrine of separation of powers counsel hesitancy before second-guessing prosecutorial choices."); *United States v. Shakir*, 113 F. Supp. 2d 1182, 1191 (M.D. Tenn. 2000) (noting that "the Court has no authority to interfere with internal DOJ policy governing the prosecutorial decision of whether to seek the death penalty.").

The Government's discretion is not unfettered, and is subject to constitutional constraints. *McCleskey*, 481 U.S. at 297.  However, a determination that the Government's discretion has been abused can only be made upon a showing of "exceptionally clear proof." *Id.*  Defendant has made no showing that the Government has abused its discretion here.  The Government is simply trying to comply with the Court's deadline for the filing of its notice of intent.

Defendant's argument that precluding the death penalty is justified in light of Counsel's belief that inadequate time was given to prepare for their presentation to the U.S. Attorney's Office and to the DOJ is meritless.  Defendant argues that the process by which the DOJ certifies a case for the death penalty "is a critical stage at which Ms. Savage's Sixth Amendment rights [] attach and should, at a minimum, receive adequate consideration." (Def.'s Mot. 2.)  Defendant is referring to what is commonly known as the "death penalty protocol."  The death penalty protocol, found in the U.S. Attorney's Manual ("USAM"), mandates the procedures to be followed by the DOJ in all federal cases where a defendant is charged with an offense subject to the death penalty.

5

Dept. of Justice, USAM § 9.10.010 (July, 2011).[4]  The death penalty protocol establishes a process whereby death-eligible cases are reviewed by the local U.S. Attorney's office, the CCRC, and the Attorney General, before the Attorney General decides whether the death penalty will be sought.  *Id.* at §§ 9.10.080, 9.10.120.  If the local U.S. Attorney's Office is considering whether to request approval from the DOJ to seek the death penalty, it must first "give counsel for the defendant a reasonable opportunity to present any facts, including any mitigating factors, for the consideration of the Untied States Attorney."  *Id.* at § 9.10.080.  Defense counsel also has an opportunity to present evidence and argument in mitigation during the CCRC's review of the case.  *Id.* at § 9.10.120.  Finally, the CCRC makes a recommendation to the Attorney General, and the Attorney General ultimately decides whether to seek the death penalty against a particular defendant.  *Id.*

As Defendant concedes, the death penalty protocol does not create enforceable rights.  (Def.'s Mot. 2).  In fact, the USAM states that it "provides only internal Department of Justice guidance" and "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal."  Dept. of Justice, USAM § 1.1000 (May, 2009).  A majority of courts, including the Third Circuit, has confirmed that the guidelines contained in the USAM do not create substantive or procedural rights for a defendant.  *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005) ("Department of Justice guidelines and policies do not create enforceable rights for criminal defendants"); *United States v. Gomez*, 237 F.3d 382, 389 (3d Cir. 2000) (stating that any argument that the USAM

---

[4] A copy of the USAM is available at http://www.justice.gov/usao/eousa/foia_reading_room/usam/.

creates rights "would be against the weight of judicial authority"); *United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001) (holding that the death penalty protocol is unenforceable and that any violation of it did not entitle defendant to a new penalty hearing); *United States v. Williams*, 181 F. Supp. 2d 267, 299 (S.D.N.Y. 2001) ("The vast majority of courts to consider this question have held that the Protocol does not create any such legally enforceable rights."); *see United States v. Furrow*, 100 F. Supp. 2d 1170, 1176 (C.D. Cal. 2000) (death penalty certification process is not a "critical stage in criminal proceedings for Sixth Amendment purposes"). Accordingly, we are compelled to reject Defendant's argument that the time afforded to Counsel in preparation for meetings with the U.S. Attorney and the DOJ justifies an order from this Court directing that the Attorney General not seek the death penalty. *See United States v. Rios Rico*, No. 05-272, 2006 U.S. Dist. LEXIS 67951, at *3-4 (D. Ariz. Sept. 20, 2006) (denying motion to strike notice of intent to seek death penalty despite defense counsel's lack of participation in the certification process); *Shakir*, 113 F. Supp. 2d 1182, 1191 (rejecting defendant's preemptive attempt to bar the DOJ from seeking the death penalty because of alleged violations of the death penalty protocol by the DOJ).

Even if the death penalty protocol did grant Defendant certain rights with respect to the certification process, Defendant has pointed to nothing that suggests that the Government has failed to comply with the protocol or has violated her rights in any way. Counsel were appointed to represent Defendant in June and July. The meeting with the U.S. Attorney took place at the end of October. The meeting with the Justice Department took place in December. Counsel had many months to get to know this client and to investigate and prepare for their meeting with the Government. The Government provided an opportunity for Counsel to present evidence and

7

argument to the U.S. Attorney. In addition, the Government accommodated Counsel's scheduling conflicts so that Counsel could meet with the DOJ. Again Counsel were provided a platform to present evidence and arguments in support of mitigation. Counsel presented substantive arguments at both of these meetings. Furthermore, the Government advises that it will accept additional evidence in support of mitigation. (Gov't's Resp. 4 (stating that "defense counsel is always permitted to submit to the government subsequent evidence and arguments concerning the decision to seek the death penalty").) Defendant's rights are not being violated here.

In support of her argument that more time is needed for Counsel to investigate mitigating factors, Defendant relies on a statistic which is purportedly an average of the time between the filing of the notice of intent and the meeting with the DOJ. According to the declaration attached to Defendant's reply, the average time is 12.2 months, based on 218 defendants authorized for the death penalty. We agree with the Government that this statistic provides little support for Defendant's constitutional claim that she is entitled to more time for a mitigation investigation. Such statistics derived from cases where the facts and investigatory needs of counsel are not known are of little value.

Defendant's argument that her counsel will not have adequate time to investigate and prepare a mitigation strategy in time for the penalty phase of her trial is without merit. Counsel contend that they will not have enough time to perform such tasks as developing a relationship with Defendant, collecting background records, identifying and interviewing witnesses and experts, and engaging in psychological testing.

The Court is cognizant of Counsel's "obligation to conduct a thorough investigation for mitigating evidence" to be used at the penalty phase of Defendant's case. *Taylor v. Horn*, 504

F.3d 416, 453 (3d Cir. 2007). Reasonableness is the benchmark by which Counsel's performance is measured in investigating and preparing for mitigation. *Strickland v. Washington*, 466 U.S. 668, 688-92 (1984). Defendant relies heavily on the American Bar Association Guidelines for the Appointment and Performance of Counsel in Capital Cases (the "ABA Guidelines"). The ABA Guidelines are meant to serve as models for what is reasonable; strict adherence is not required by the law. *Hummel v. Rosemeyer*, 564 F.3d 290, 302 (3d Cir. 2009) ("The [ABA] Standards are guides, but only guides, to what is reasonable."); *Showers v. Beard*, 635 F.3d 625, 633 (3d Cir. 2011) (stating that the ABA Guidelines for Appointment and Performance of Counsel in Death Penalty Cases are "informative," although not "dispositive" for determining whether counsel was ineffective). Investigations into mitigation necessarily have limitations. The law "does not require that counsel investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." *Wiggins v. Smith*, 539 U.S. 510, 533 (2003).

      Counsel have already had almost six months to develop a relationship with Defendant, and to identify and interview key mitigation witnesses. Moreover, the Government advises that most of the background records that Counsel claim they need time to gather have either already been provided or do not exist. Trial is over eight months away. While not discounting the complexity of this case and the significant volume of discovery, we agree with the Government that Defendant's charges relate to a single episode. Discovery was provided shortly after Defendant's arrest. Counsel will have adequate time to continue their efforts in investigating mitigating factors in preparation for the penalty phase. *See, e.g.*, *United States v. Wilk*, 452 F.3d 1208, 1225 (11th Cir. 2006) (finding that the notice of intent to seek the death penalty, which was filed six

9

months before the trial, was reasonable notice under 18 U.S.C. § 3593); *United States v. Ponder*, 347 F. Supp. 2d 256, 270 (E.D. Va. 2004) (notice of intent to seek the death penalty filed within four months before trial date held to be reasonable notice).

Finally, notwithstanding Counsel's protests that Defendant was afforded inadequate time to investigate and prepare, the requested remedy—to preclude the death penalty altogether—is not justified and finds no support in the law. Defendant has not pointed to any case where a court has imposed such a drastic sanction, either preemptively, or as a result of defense counsel's lack of time to investigate and develop a mitigation strategy. The Court has the utmost confidence in Defendant's highly competent defense counsel. We are satisfied that the current schedule in place will provide more than adequate time for Counsel to protect Defendant's constitutional rights.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Preclude the Death Penalty is denied. An appropriate Order follows.

**BY THE COURT:**

**/s/** *R. Barclay Surrick*
**U.S. District Judge**